UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS HIGHTOWER,<br><br>    Petitioner,<br><br>    v.<br><br>BRIAN KOEHN,<br><br>    Respondent. | Case No.: 1:14-cv-01675 LJO JLT (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY-ONE DAYS |

Petitioner was convicted of a number of crimes including commercial burglary. As a result, the trial court sentenced him, ultimately, to ten years and four months in prison. In this action, Petitioner claims the trial court improperly calculated his custody credits, that there was insufficient evidence to support the conviction for commercial burglary, that he failed to receive effective assistance of counsel and that he was not provided the discovery he sought before trial.

The Court finds that Petitioner has failed to exhaust two of the claims and he fails to demonstrate any entitlement to relief on other grounds. Thus, the Court recommends the petition be **DENIED**.

I.     <u>**PROCEDURAL HISTORY**</u>

A jury convicted Petitioner of second degree commercial burglary, unlawful driving or taking of a vehicle, and misdemeanor possession of burglary tools. (Doc. 17, Ex. A). After Petitioner waived his right to a jury trial, the court found true allegations that he had three prior serious felony convictions

within the meaning of California's Three Strikes Law, as well as three prior prison term enhancements. (Id.). The court sentenced Petitioner to a term of 25-years-to-life for the burglary conviction and a concurrent term of 25-years-to-life for taking the vehicle. (Id.). Following a change in state law, the court granted Petitioner's request for resentencing after which, the court sentenced him to a term of ten years and four months. (Lodged Document ("LD") 8).

Petitioner filed a direct appeal in the California Court of Appeals, Fifth Appellate District (the "5th DCA"), which affirmed the conviction. (Doc. 17, Ex. A). Petitioner then filed a petition for review in the California Supreme Court that was denied. (LD 7).

Petitioner next filed three state habeas corpus petitions in the Superior Court (LD 14; 15; 16), each of which was denied. (LD 17; 18; 19). Petitioner then filed three petitions in the 5th DCA which were also denied. (LD 20-22; 23-25). Finally, Petitioner filed three habeas petitions in the California Supreme Court. (LD 26-28). That court denied each of these petitions as well. (LD 29; 30; 31).

In his opposition to the petition, Respondent contends Petitioner has not exhausted two of the stated grounds for relief. (Doc. 17).

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the 5th DCA's unpublished decision[1]:

> On January 13, 2011, Randall Burke exited his house and found his light gold Toyota Camry missing from his driveway. Burke had not given anyone permission to take his car. Burke had locked the car the previous day and had given the keys to his son to find something in his car. Burke could not find his car keys. Burke believed that his son may have left the key in the car door.
>
> On the morning of January 13, 2011, Mehdi Huda and Danish Khakoo were working at Prince's Superette, a gas station and convenience store in Visalia. Between 11 a.m. and noon, appellant entered the store and asked for adult movies. Huda pulled out a box of DVDs and placed them on the counter for appellant. After sorting through the DVDs, appellant grabbed five or six of them and ran out of the store.
>
> Khakoo chased appellant but did not catch him. Khakoo identified appellant in a field identification that afternoon and testified that appellant was the person who stole the DVDs.
>
> Huda got into his car to look for appellant. Huda saw a gold Toyota Camry parked in an odd place, like a red zone, and took down the license plate number. Huda then saw the appellant enter the car and drive away. Appellant took an unusual turn as he left the scene and nearly hit another car.

---

[1] The 5th DCA's summary of the facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Thus, the Court adopts the factual recitations set forth by the 5th DCA.

2

> Just before 1 p.m. that afternoon, Barbara Raibley, the owner of a tax service, learned that an unidentified car was parked in the back parking lot of her business. Raibley reported the vehicle description and license plate number to the police. Raibley viewed a surveillance videotape from a parking lot camera and saw that the car had been left by a male carrying a backpack. The police determined that the car was Burke's stolen Camry.
>
> Sergeant Corey Sumpter began searching the area for someone who matched appellant's description. Sumpter stopped appellant, who was carrying a backpack, as appellant was leaving a nearby apartment complex. Sumpter found the stolen Camry key belonging to Burke in appellant's sweatshirt. Sumpter searched inside appellant's backpack and found a plastic DVD case containing six adult DVDs, some shaved Honda master keys used to open doors and start ignitions, latex gloves, and mail addressed to appellant.
>
> Khakoo was brought to the scene for a field identification and he identified appellant as the DVD thief. Appellant was arrested.
>
> A defense investigator tried to show Huda a photographic lineup, but Huda told the investigator that he did not see appellant long enough to identify him. According to the investigator, Khakoo also was unable to identify anyone in the photographic lineup as the DVD thief.
>
> Appellant testified that he either took the bus or walked on the day of his arrest. Appellant stated that he had not been in Prince's Superette the morning of the theft. Appellant said he found the keys to the Camry on the ground while walking around. Appellant received the shaved keys and the DVDs from a friend. Appellant admitted he had prior felony convictions and was on parole at the time of his arrest.

(Doc. 17, Exh. A, pp. 4-5).

### III.  DISCUSSION

#### A.  Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution.  The challenged conviction arises out of the Tulare County Superior Court, which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008, 118 S.Ct. 586 (1997); Jeffries v. Wood, 114 F.3d 1484, 1500 (9th Cir. 1997), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (holding the AEDPA only applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment of the AEDPA and is therefore governed

3

by its provisions.

### B. <u>Legal Standard of Review</u>

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003); <u>Williams</u>, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005), citing <u>Williams</u>, 529 U.S. at 405-406 (2000).

In <u>Harrington v. Richter</u>, 562 U.S. ___ , 131 S.Ct. 770 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.'" <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1410-1411 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." <u>Harrington</u>, 131 S.Ct. at 787-788.

The second prong pertains to state court decisions based on factual findings. <u>Davis v. Woodford</u>, 384 F.3d at 637, citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. at 520; <u>Jeffries v. Wood</u>, 114 F.3d at 1500. A state court's factual finding is unreasonable when it is "so clearly incorrect that it

4

would not be debatable among reasonable jurists." Id.; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), cert.denied, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007)(holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

**IV.     Review of Petitioner's Claims.**

Petitioner alleges as grounds for relief: (1) the trial court improperly calculated his sentence by misapplying state custody credits; (2) there was insufficient evidence to support the conviction for burglary; (3) he suffered from ineffective assistance of trial counsel; and (4) the trial court erred in denying his request for discovery.

**A.     Custody Credits**

Petitioner contends that, pursuant to Proposition 36, passed in California in 2012, Petitioner is entitled to have his custody credits determined at 33.33% rather than at 20%. (Doc. 1, p. 5). Respondent argues that this claim is unexhausted and, because it implicates only state law issues, it is not cognizable in these proceedings. The Court agrees.

**1.     Exhaustion**

A petitioner who is in state custody and wishes to bring a collateral challenge to his conviction by a petition for writ of habeas corpus must first exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. Coleman v. Thompson, 501 U.S. 722, 731 (1991); Rose v. Lundy, 455 U.S. 509, 518 (1982); Buffalo v. Sunn, 854 F.2d 1158, 1163 (9th Cir. 1988).

To exhaust a claim, the petitioner must provide the highest state court with a full and fair opportunity to consider each claim *before* presenting it to the federal court. Duncan v. Henry, 513 U.S. 364, 365 (1995); Picard v. Connor, 404 U.S. 270, 276 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). Petitioner gives the highest state court a full and fair opportunity to hear a claim only if he presents the court with the factual and legal basis for the claim. Duncan, 513 U.S. at 365 (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis). Additionally, the petitioner must tell the state court specifically that he was raising a claim based on the United States Constitution. Duncan, 513 U.S. at 365-66; Lyons v. Crawford, 232 F.3d 666, 668-669 (9th Cir. 2000), *amended*, 247 F.3d 904 (2001); Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir. 1999); Keating v. Hood, 133 F.3d 1240, 1241 (9th Cir. 1998).

Respondent has lodged documents with the Court establishing that, though Petitioner raised this issue in some lower state courts, he did not raise this claim in the California Supreme Court. Accordingly, the claim is unexhausted and federal review is barred.

### 2. **State Law Issues**

In addition, the issue of his sentence calculation implicates only state law. Such a claim is not cognizable in federal habeas proceedings. Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'"), *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Gilmore v. Taylor, 508 U.S. 333, 348-349 (1993)(O'Connor, J., concurring)("mere error of state law, one that does not rise to the level of a constitutional violation, may not be corrected on federal habeas"). Indeed, subsection (c) of Section 2241 of Title 28 of the United States Code provides that habeas corpus shall not extend to a prisoner unless he is "in custody in violation of the Constitution." 28 U.S.C. § 2254(a) states that the federal courts shall entertain a petition for writ of habeas corpus only on the ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States. See also, Rule 1 to the Rules Governing Section 2254 Cases in the United States District Court. Furthermore, Petitioner must demonstrate that the state court adjudication resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1), (2). Alternatively, he may demonstrated the decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding. Id. However, Petitioner does not allege a violation of the Constitution or federal law, nor does he argue that he is in custody in violation of the Constitution or federal law.

Indeed, federal courts are bound by state court rulings on questions of state law. Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir.), *cert. denied*, 493 U.S. 942 (1989). Further, "the availability of a claim under state law does not of itself establish that a claim was available under the United States Constitution." Sawyer v. Smith, 497 U.S. 227, 239 (1990), *quoting,* Dugger v. Adams, 489 U.S. 401, 409 (1989). Tinsley v. Borg, 895 F.2d 520, 530 (9th Cir.1990), *cert. denied*, 498 U.S. 1091 (1991) ("incorrect" evidentiary rulings are not the basis for federal habeas relief).

To the extent that the petition can be construed as seeking to raise a federal claim by alleging the state court's calculations violated Petitioner's "due process" rights, such vague and broad assertions do not transform this claim into a federal one. Merely placing a "due process" label on an alleged state law violation does not entitle Petitioner to federal relief. Langford v. Day, 110 F.3d 1386, 1388-89 (1996). Broad, conclusory allegations of unconstitutionality are insufficient to state a cognizable claim. Jones v. Gomez, 66 F.3d 199, 205 (9th Cir.1995); Greyson v. Kellam, 937 F.2d 1409, 1412 (9th Cir.1991) (bald assertions of ineffective assistance of counsel did not entitle the petitioner to an evidentiary hearing); see also Hiivala v. Wood, 195 F.3d 1098, 1106 (9th Cir.1999), *citing* Gray v. Netherland, 518 U.S. 152, 162-63 (1996) ("general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion). Accordingly, Ground One fails to state a federal question for which habeas relief can be granted

However, even on the merits, this claim fails. The Superior court rejected the claim, reasoning that Petitioner "is not entitled to credits under [Proposition 36]. His offenses occurred prior to implementation of the new sentencing gridlines [sic]. The law is not retroactive and, therefore, petitioner is entitled to credits under the old sentencing." (LD 19). The state court's reasoning is simple, concise, and direct. Nothing Petitioner has argued in any contradicts the state court's analysis or requires a different outcome. Accordingly, even on the merits, the claim must be rejected.

///

///

B. **Sufficiency of the Evidence**

1. **The State Court Decisions**

The Superior Court's order denying Petitioner's sufficiency claim was summary and contained no explanation or reasoning. (LD 17). When a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ––– U.S. –––, –––, 133 S.Ct. 1088, 1091 (2013). Moreover, where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Stanley v. Cullen, 633 F.3d 852, 860 (9th Cir. 2011); Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.2003); Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002) (holding that when there is an adjudication on the merits but no reason for the decision, the court must review the complete record to determine whether resolution of the case constitutes an unreasonable application of clearly established federal law); Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." Harrington, 131 S.Ct. at 784.

The 5th DCA, in rejecting this claim, deemed the claim procedurally barred for failure to raise the claim in the direct appeal, citing In re Harris, 5 Cal.4th 813 (1993). (LD 23). State courts may decline to review a claim based on a procedural default. Wainwright v. Sykes, 433 U.S. 72, 86–87 (1977). Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991); LaCrosse v. Kernan, 244

F.3d 702, 704 (9th Cir. 2001); see Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991); Park v. California, 202 F.3d 1146, 1150 (2000) ("A district court properly refuses to reach the merits of a habeas petition if the petitioner has defaulted on the particular state's procedural requirements . . . ."); see also Fox Film Corp. v. Muller, 296 U.S. 207, 210 (1935).  This concept has been commonly referred to as the procedural default doctrine, and is based on concerns of comity and federalism.  Coleman, 501 U.S. at 730-32.  If the court finds an independent and adequate state procedural ground, "federal habeas review is barred unless the prisoner can demonstrate cause for the procedural default and actual prejudice, or demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice."  Noltie v. Peterson, 9 F.3d 802, 804-805 (9th Cir. 1993); Coleman, 501 U.S. at 750; Park v. California, 202 F.3d 1146, 1150 (9th Cir. 2000).

"For a state procedural rule to be 'independent,' the state law basis for the decision must not be interwoven with federal law." LaCrosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001) (*citing* Michigan v. Long, 463 U.S. 1032, 1040-41 (1983)); Morales v. Calderon, 85 F.3d 1387, 1393 (9th Cir. 1996) ("Federal habeas review is not barred if the state decision 'fairly appears to rest primarily on federal law, or to be interwoven with federal law.'" (*quoting* Coleman, 501 U.S. at 735).  "A state law is so interwoven if 'the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed.'" Park, 202 F.3d at 1152 (*quoting* Ake v. Oklahoma, 470 U.S. 68, 75 (1985)).

To be deemed adequate, the state law ground for decision must be well-established and consistently applied. Poland v. Stewart, 169 F.3d 573, 577 (9th Cir. 1999) ("A state procedural rule constitutes an adequate bar to federal court review if it was 'firmly established and regularly followed' at the time it was applied by the state court.")(*quoting* Ford v. Georgia, 498 U.S. 411, 424, 111 S.Ct. 850 (1991)).  Although a state court's exercise of judicial discretion will not necessarily render a rule inadequate, the discretion must entail "'the exercise of judgment according to standards that, at least over time, can become known and understood within reasonable operating limits.'" Id. at 377 (*quoting* Morales, 85 F.3d at 1392).

California has established a procedural rule which provides that a California court, in a habeas corpus proceeding, will not review the merits of a claim if that claim could have been raised in a timely

appeal but was not. In re Dixon, 41 Cal.2d at 759 ("[I]n the absence of special circumstances constituting an excuse for failure to employ [the] remedy [of direct review], the writ will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction"). See In re Harris, 5 Cal.4th 813, 823 (1993) (explaining In re Dixon rule).  Despite the petitioner's failure to bring a claim on direct appeal from a conviction, a California court will hear the merits of case if the court finds one of four exceptions. The four exceptions to the Dixon bar are: 1) fundamental constitutional error; 2) a lack of fundamental jurisdiction by the trial court over the petitioner; 3) the trial court's acting in excess of jurisdiction; and 4) an intervening change in the law. Fields, 125 F.3d at 763, *quoting*, In re Harris, 5 Cal.4th at 828-842.

Since the California Supreme Court's 1998 decision in In re Robbins, 18 Cal.4th 770, 811-812 & n. 32 (1998), the Dixon rule has been independent of federal law. Park v. California, 202 F.3d 1146, 1152 (2000).  Since the California Supreme Court's 1993 decisions in In re Harris, 5 Cal.4th 813, 823 (1993), citing here by the 5th DCA, and In re Clark, 5 Cal.4th 750 (1993), the Dixon rule has been consistently applied, i.e., "adequate."  Park, 202 F.3d at 1152. Hence, any state court ruling procedurally barring a habeas claim because the petition failed to raise that claim in his direct appeal, i.e., the Dixon rule, will be barred on federal habeas review unless the petitioner can demonstrate (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. Harris v. Reed, 489 U.S. 255, 262-263 (1989); Coleman v. Thompson, 501 U.S. 722, 750 (1989).  Thus, to the extent that the claim is procedurally barred, habeas review in this Court is barred.  However, even as to the merits, the Court, applying the independent review standard, nevertheless concludes that the claim is without merit.[2]

### 2. **Federal Standard**

Pursuant to the Supreme Court's holding in Jackson v. Virginia, the test on habeas review to determine whether a factual finding is fairly supported by the record is as follows: "[W]hether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id., 443 U.S. at 319; see also

---

[2] The Superior Court rejected the claim stating "He claims the evidence was insufficient to convict him.  That is clearly not true ." (LD 17).  In the Court's view, such a conclusory analysis fails to qualify as a last "reasoned" decision by the state court.  Accordingly, the Court, in addressing the merits, must conduct an independent review of the record.

10

Lewis v. Jeffers, 497 U.S. 764, 781 (1990). Thus, only if "no rational trier of fact" could have found proof of guilt beyond a reasonable doubt will a petitioner be entitled to habeas relief. Jackson, 443 U.S. at 324. Sufficiency claims are judged by the elements defined by state law. Id. at 324, n. 16.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992). The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt.'" See id., *quoting* Jackson, 443 U.S. at 319. Only where no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324; Payne, 982 F.2d at 338.

If confronted by a record that supports conflicting inferences, a federal habeas court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. A jury's credibility determinations are therefore entitled to near-total deference. Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004). Except in the most exceptional of circumstances, Jackson does not permit a federal court to revisit credibility determinations. See id. at 957-958.

Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction. Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir. 1995). However, mere suspicion and speculation cannot support logical inferences. Id.; see, e.g., Juan H. v. Allen, 408 F.3d 1262, 1278-1279 (9th Cir. 2005)(only speculation supported conviction for first degree murder under theory of aiding and abetting). After the enactment of the AEDPA, a federal habeas court must apply the standards of Jackson with an additional layer of deference. Juan H., 408 F.3d at 1274. Generally, a federal habeas court must ask whether the operative state court decision reflected an unreasonable application of Jackson[3] and Winship to the facts of the case. Id. at 1275.

Moreover, in applying the AEDPA's deferential standard of review, this Court must also

---

[3] To the extent that the 5th DCA's opinion does not expressly cite the Jackson v. Virginia standard in analyzing the sufficiency claims herein, it must be noted that, long ago, the California Supreme Court expressly adopted the Jackson standard for sufficiency claims in state criminal proceedings. People v. Johnson, 26 Cal.3d 557, 576 (1980). Accordingly, the state court applied the correct legal standard, and this Court's only task is to determine whether the state court adjudication was contrary to or an unreasonable application of that standard.

11

presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986). This presumption of correctness applies to state appellate determinations of fact as well as those of the state trial courts. Tinsley v. Borg, 895 F.2d 520, 525 (9th Cir.1990). Although the presumption of correctness does not apply to state court determinations of legal questions or mixed questions of law and fact, the facts as found by the state court underlying those determinations are entitled to the presumption. Sumner v. Mata, 455 U.S. 539, 597 (1981); Cavazos, v. Smith, __U.S. __, 132 S.Ct. 2, 3 (2011) ["Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold."]

### 3. Analysis

The gravamen of Petitioner's claim is that the prosecution presented insufficient evidence on the charge of commercial burglary. (LD 27, p. 3). Petitioner appears to argue that simply taking compact discs without payment and running out of the store is not burglary but, instead, some kind of shoplifting or petty theft, at most. (Id.). Petitioner also contends that his evidence was not "accurately presented," i.e., that all he did was grab CDs and leave without paying; he did not commit burglary. (Id.).

Petitioner was convicted of second degree commercial burglary, a violation of California Penal Code sec. 459. (Doc. 17, Ex. A). Section 459 provides, in pertinent part, as follows: "Every person who enters any…shop…[or]…store, …with intent to commit grand or petit larceny or any felony is guilty of burglary." At trial, Danish Khakoo testified he was working at a convenience store and gas station when a man came in and asked where the magazines were located. (Reporter's Transcript on Appeal ("RT") p. 88). Khakoo then saw his boss, Mehdi Huda, pull out a box of DVD's so the man could look through them. (Id.). About fifteen seconds later, the man grabbed a handful of the DVDs and ran out of the store without paying for them. (RT 89). Khakoo chased the individual for about one hundred feet but eventually gave up. (RT 90). The DVDs in question were "adult" DVDs that sell for approximately $14-15. (Id.). Khakoo identified Petitioner as the individual who took the DVDs. (RT 93). Kkakoo also identified Petitioner on the day of the theft during a police "show-up." (RT 94).

Sharon Brown, an officer with the Visalia Police Department, was called to the scene of the

burglary and interviewed both Huda and Khakoo. (RT 127). Huda, who had followed Petitioner in a stolen vehicle, obtained a license plate number, which he gave to Brown. (RT 129). Brown put the license number in her report. (Id.). Approximately an hour later, a report was made of a stolen vehicle matching the plate number given to Brown by Huda. (RT 129). At that location, Brown learned that a suspect had been detained. (RT 130). She then returned to the convenience store to get Khakoo and bring him for a field showup with Petitioner. (RT 134). Khakoo told Brown that Petitioner "definitely" was the individual who took the DVDs. (RT 136).

Corey Sumpter, a sergeant in the Visalia Police Department, testified that he was called to the scene of a stolen vehicle and determined that it matched the license plate number of the vehicle in which Petitioner had escaped from the convenience store. (RT 171). Sumpter then began to search the area for someone matching the description given to police by Huda and Khakoo, and saw Petitioner coming out of some apartments nearby. (RT 172). Sumpter stopped Petitioner and, after Petitioner agreed to a search of his backpack, discovered the keys to the stolen car and a DVD case containing six "X-rated" DVDs. (RT 175).

From the foregoing, it is patent that, construing the evidence in the light most favorable to the prosecution, sufficient evidence was presented that Petitioner entered a "store" with the intent to commit petit larceny. Under Jackson, no more is required.[4] That Petitioner wished to portray his crime as simple shoplifting or larceny is understandable. However, his claim is framed as a "sufficiency" argument and that is how it was presented to the state courts. Thus, this Court reviews the claim as framed, and, in doing finds that a "rational trier of fact" could have found Petitioner guilty of second degree commercial burglary. Jackson, 443 U.S. at 324. Accordingly, the claim should be denied.

### C.     Ineffective Assistance of Counsel

Petitioner next argues his trial and appellate counsel failed to provide effective representation, as required by the Sixth Amendment. Specifically, Petitioner contends that trial counsel "failed to present all evidence, failed to subpoena witnesses, failed to maintain contact with [Petitioner]," and that

---

[4] In rejecting Petitioner's sufficiency claim, the 5th DCA astutely noted that the claim "is based on [Petitioner's] view of the evidence, not [upon] a complete lack of it." (Doc. 1, p. 14).

13

appellate counsel "failed to address applicable grounds on opening brief," focusing exclusively on sentencing error rather than trial error. (Doc. 1, p. 12). This contention also lacks merit.

### 1. Superior Court's Opinion

After an extensive discussion of the Strickland standard, discussed infra, the state court concluded as follows:

> Petitioner failed to raise any issues which rise to the level of prima facie evidence which would warrant relief....In addition to all of the above, the petitioner entered into a plea agreement to avoid exposure to greater punishment should he be convicted of the charged offenses. He received the benefit of his bargain and received the exact sentence he agreed to. He cannot now come forward and claim he doesn't want the deal.

(LD 18).

### 2. Federal Standard

The Due Process Clause of the Fourteenth Amendment guarantees effective assistance of appellate counsel. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of appellate counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052 (1984). Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed on appeal. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the appeal. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir.1998).

With the passage of the AEDPA, habeas relief may only be granted if the state court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. \_\_\_, 129 S.Ct. 1411, 1419 (2009). Accordingly, the question "is not whether a

federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles v. Mirzayance, 556 U.S. ___, 129 S.Ct. at 1420.  In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also that it was objectively unreasonable.  Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

In challenges to the effective assistance of appellate counsel, the same standards apply as with the claims of ineffective assistance of trial counsel.  Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527 (1986).   In Smith, the United States Supreme Court indicated that an appellate attorney filing a merits brief need not and should not raise every non-frivolous claim.  Robbins, 528 U.S. at 288.  Rather, an attorney may select from among them in order to maximize the likelihood of success on appeal.  Id.  As a result, there is no requirement that an appellate attorney raise issues that are clearly untenable.  Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980); see also Gillhan v. Rodriguez, 551 F.2d 1182 (10th Cir. 1977).

### 3.  Analysis

Rule 2 of the Rules Governing Section 2254 Cases provides that the petition:

> "…shall specify all the grounds for relief which are available to the petitioner and of which he has or by the exercise of reasonable diligence should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified."

Rule 2(c), Rules Governing Section 2254 Cases.  Petitioner must also clearly state the relief sought in the petition.  Id.  Additionally, the Advisory Committee Notes to Rule 4 explains that "… '[N]otice' pleading is not sufficient, for the petition is expected to state facts that point to a 'real possibility of constitutional error.'"  Advisory Committee Notes to Rule 4; see Blackledge v. Allison, 431 U.S. 63, 75, n. 7 (1977).

Here, as mentioned, Petitioner challenges trial counsel's representation in failing to present all

evidence, to subpoena witnesses, and to maintain contact with Petitioner. The petition, however, contains no details or specific allegations regarding the evidence trial counsel could or should have presented, nor which witnesses counsel should have called but did not. The petition does not specify in what ways counsel failed to maintain contact with Petitioner or what communication could have been, but was not, transmitted had additional contacts been maintained. In short, the petition is conclusory and inadequate to state a cognizable federal habeas claim for ineffective assistance of counsel. Such inadequacy is fatal for federal review since Petitioner has not provided any information regarding specific acts of attorney misconduct to which the Court could apply Strickland.

Respondent assumes, understandably, that Petitioner intended to argue that counsel was derelict in failing to challenge his prior convictions. However, a comprehensive review of the petition itself fails to disclose any such claim. Accordingly, the Court need not address any allegation not raised in the petition.

In sum, Petitioner has submitted a claim that fails to comply with the requirements of Rule 2(c). It is Petitioner's responsibility to specify the ground for relief and to provide sufficient factual allegations for the Court to determine what claim Petitioner is seeking to raise and whether that claim states the kind of federal constitutional violations upon which this Court's habeas jurisdiction may be predicated. Petitioner has failed to meet these minimal pleading requirements with regard to this claim. As the state court put it, Petitioner has failed to make a prima facie showing of ineffective assistance. Accordingly, the claim should be rejected.

### D. Denial of Discovery

Finally, Petitioner contends that the trial court permitted his conviction without proper police investigation, e.g., videotapes from the convenience store, forensic testing of the stolen vehicle, surveillance cameras in the area, and without permitting Petitioner and his counsel to conduct a proper investigation into Petitioner's allegation that he had been misidentified. (Doc. 1, p. 16). This contention is also without merit.

#### 1. Analysis

Respondent first argues that the claim is unexhausted and the Court agrees. In his petition, Petitioner appears to concede he has not exhausted this claim by raising it in the California Supreme

Court. (Doc. 1, pp. 16-18). Accordingly, as discussed previously, an unexhausted claim bars federal review.

Second, Petitioner has not identified, and the Court is unaware of, any "clearly established Supreme Court" authority that a petitioner has a constitutional right to be provided the kinds of discovery—through additional investigation and research—to which Petitioner alludes. In the absence of any clearly established federal law, there can be no habeas relief. See 28 U.S.C. § 2254(d); Lockyer v. Andrade, 538 U.S. at 70-71.

Finally, Petitioner does not provide any specific information about what such additional discovery or investigation would have revealed, how it would have affected his defense or the trial, or, indeed, whether such additional discovery would have had any impact at all on the state court proceedings at all. Based on this paucity of evidence, the Court can only conclude that even if, arguendo, the error occurred, it failed to have a "substantial and injurious" effect on the outcome of the trial. See Brecht v. Abrahamson, 407 U.S. at 637. Accordingly, the error, if any, was harmless.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1), be **DENIED with prejudice.**

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).

///
///
///
///

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **April 26, 2016**                             /s/ Jennifer L. Thurston
                                                                    UNITED STATES MAGISTRATE JUDGE